UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY RICHARDSON,

                                    Plaintiff,

        -vs-                                                          09-CV-824-JTC

CITY OF NIAGARA FALLS, NEW YORK,
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, TEAMSTERS JOINT
COUNCIL NO. 46, and THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, LOCAL
NO. 264,

                                    Defendants.

_____


        Plaintiff Mary Richardson brought this action against the City of Niagara Falls, New

York (the "City"), the International Brotherhood of Teamsters, and Teamsters Local No.

264 (collectively, the "Union"), asserting claims for discrimination and retaliation on the

basis of race (African American) in violation of the Civil Rights Act of 1991, 42 U.S.C.

§ 1981, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296,

as well as a "hybrid" claim for breach of the collective bargaining agreement between the

City and the Union in violation of Section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185, and breach of the Union's duty of fair representation in violation

of Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).  Both the City and

the Union have moved for summary judgment.  For the reasons that follow, the summary

judgment motions are granted.

**BACKGROUND**

The following facts are derived from defendants' statements of fact on summary

judgment (Items 53-5 and 54-1) and supporting affidavits and exhibits, submitted in

accordance with Rule 56 of the Local Rules of Civil Procedure for the Western District of

New York.[1]

For many years, the City Police Department operated a detention center at police

headquarters, located on Hyde Park Boulevard, where prisoners and detainees were held

for short periods of time.  Male and female prisoners were processed and held in separate

areas of the detention center.  Female civilian Detention Aides, represented for collective

bargaining purposes by Teamsters Local 264, were responsible for guarding female

prisoners.  Item 53-5, ¶¶ 1-4.

Plaintiff was hired by the City on December 5, 1988 as a part-time Auxiliary

Policewoman, later reclassified to Detention Aide.  In that position, plaintiff had the

---

[1]Local Rule 56(a)(1), in effect at the time the summary judgment motions were filed, requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried ...."  Local Rule 56(a)(2) provides:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried.  Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

Plaintiff has not submitted the responding statement required by Local Rule 56(a)(2).  As the Second Circuit has noted, "[w]hen a party has moved for summary judgment ... and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992).  Accordingly, the facts set forth in defendants' Local Rule 56(a)(1) statements are deemed admitted to the extent they are supported by the record evidence.  *See Bonilla v. BOCES*, 2010 WL 3488712, at *1 (W.D.N.Y. Sept. 2, 2010).

responsibility of guarding female prisoners in the City Jail under the direct supervision of

the City Police Department.  From July 20, 2000 through May 31, 2004 (a period of 3

years, 10 months, and 11 days), plaintiff was out of work and off the City payroll due to

non-occupational medical reasons.  She returned to work in June 2004 after she passed

a physical exam.  Item 54-1, ¶¶ 1-4.

Prior to plaintiff's return to work, the City consulted the Union in order to properly

adjust plaintiff's seniority date to account for the long period of time that she was off the

City payroll.  The City and Union agreed that, in accordance with City ordinances and Civil

Service rules governing medical leave, plaintiff should be credited for her first year of

absence, but not for the next 2 years, 10 months, and 11 days, since the City could have

terminated her employment after one year of unexplained absence.  *See, e.g.*, N.Y. Civil

Service Law § 73.  As a result, at the time she returned to work in June 2004, plaintiff's

seniority date was adjusted to October 16, 1991, placing her third on the seniority list for

Detention Aides for purposes of scheduling and overtime.  Item 54-1, ¶¶ 5-14.

In December 2008, following plaintiff's repeated requests for review of her seniority

status, the City sent plaintiff a letter notifying her that:

> After further review of the basis on which your benefit date for purposes of
> scheduling and call-in for extra time (only) was established, (not the seniority
> date for lay off purposes), the City Administration has agreed to restore this
> date to your original date of hire as a part-time Auxiliary Policewoman, which
> was 12/5/88.  This action is being taken despite the fact that you were off
> work for a period of 3 years, 10 months and 11 days, from July 20, 2000
> through May 31, 2004.  After reviewing your case, it was determined that,
> although eh normal process was not followed, this was through no fault of
> your own.

Item 57-1, p. 18.  As a result, in March 2009 the Union filed an Improper Practice charge

with the Public Employment Relations Board ("PERB") (Charge No. U-28788), alleging that

the City violated New York Civil Service Law §§ 209-a.1(a) and (d) (commonly referred to as the "Public Employees' Fair Employment Act," or the "Taylor Law") by directly dealing with a member of the bargaining unit without notice to the Union, which resulted in the displacement of more senior Detention Aides from preferred shifts and overtime assignments.  *See* Item 53-4, pp.  21-25.

Also in March 2009, upon completion of a new public safety facility to house the City courthouse and attached detention center, the City notified the Union that the Detention Aide position would be eliminated and prison guard services would be provided by uniformed police officers.  This was due to the implementation of a new policy allowing tasers to be used in secure areas of the new facility, and civilians are prohibited under New York Penal Law from using tasers.  *See* N.Y Penal Law §§ 265.01, 265.20.  As a result, on April 24, 2009, the Union filed an Improper Practice charge with PERB objecting to the City's abolishment of the Detention Aide position.  *See* Item 53-4, pp. 27-30.

On April 17, 2009, plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") against the City charging discrimination in employment on the basis of race, in violation of New York Human Rights Law (Charge No. 10133053; cross-filed with the United States Equal Employment Opportunity Commission ("EEOC") as Charge No. 16GA903508).  She alleged that the City discriminated against her by ranking two later-hired Caucasian employees above her on the seniority list.  *See* Item 56-1, pp. 2-3.  On October 10, 2009, NYSDHR issued an order dismissing this charge as "untimely because it was not filed with the Division within one year after the alleged unlawful discriminatory practice [namely, her seniority ranking upon returning to work in June 2004], as required by Section 297.5 of the Human Rights Law."  *Id.* at 6.

Meanwhile, in May and June 2009, representatives from the City and the Union engaged in extensive settlement negotiations regarding the propriety and impact of the decision to transfer Detention Aides' duties to uniformed police officers, and the parties asked PERB to postpone any action on the pending Improper Practice charges related to this issue while negotiations were ongoing.  As a result of the negotiations, the Union and the City reached a "Settlement Agreement" in June 2009 whereby the City agreed to award severance pay to Detention Aides based on their years of service, according to the following formula:

| Years of Service | Weeks of Severance Pay |
|---|---|
| 1 year but not more than 2 years | 2 |
| 2 years but not more than 5 years | 5 |
| 5 years but not more than 10 years | 8 |
| 10 years but not more than 15 years | 12 |
| 15 years but not more than 20 years | 20 |
| 20 years but not more than 25 years | 25 |
| More than 25 years | 52 |

*See* Item 55-1, pp. 13-17.  As an alternative to severance, the City agreed to offer Detention Aides continued employment with the City in a "Cleaner" position at full time pay and benefits.  *See id.* at 14-15.

To implement the Settlement Agreement, the City and the Union negotiated a separate "Separation and General Release" for each of the eight Detention Aides (the "Separation Agreements").  *See id*. at 20-67.  Two of the eight Detention Aides (Emily Belkota and Pearl Murphy) accepted jobs as Cleaners, and the remaining six were offered the following consideration in their respective Separation Agreements (listed here in order of seniority):

| | Name | Hire Date | Severance Amt. | Add'l Amt. | Total |
|---|---|---|---|---|---|
| 1. | Donna Donohue | 1/16/90 | $23,362.70 | N/A | $23,362.70 |
| 2. | Kathleen Terrana | 1/22/90 | $18,693.25 | N/A | $18,693.25 |
| 3. | Mary Richardson | 10/16/91 | $14,677.41 | N/A | $14,677.41 |
| 4. | Susan Winchell | 7/1/97 | $12,531.00 | N/A | $12,531.00 |
| 5. | Daniel Coates | 1/2/07 | $1,995.80 | $7,000 | $8,995.80 |
| 6. | Crystal Klein | 12/10/07 | $573.33 | $2,500 | $3,573.33 |

Item 55, ¶ 19.

By virtue of her separately negotiated Separation Agreement (*id.* at 32-36), plaintiff was offered the choice between continued full-time employment with the City as a Cleaner, or accepting a severance payment in the amount of $14,677.41 as compensation for release of all claims against the City, including the claims asserted in her then-pending NYSDHR charge or any other claims brought under "federal, state, or local law, constitution, rule, regulation, executive order or guideline from the beginning of the world through the effective date" of the Separation Agreement. *Id.* at 33. Plaintiff declined both the offer of severance pay and the alternative offer of continued employment as a Cleaner.[2]

Instead, on September 18, 2009, plaintiff filed this lawsuit in which she alleges that the severance formula negotiated by the City and the Union "was arbitrarily devised, so as to award Plaintiff substantially less severance pay than her Caucasian co-workers." Item 1, ¶ 19. She alleges further that, while all of the individual Separation Agreements contained the same general release language, her Caucasian co-workers had no pending

---

[2] Daniel Coates, the only other African American Detention Aide, also declined the offer of severance pay/continued employment as a Cleaner, and has filed an action in this court against the City and the Union, captioned *Coates v. City of Niagara Falls, et al.*, No. 09-CV-933, based on the same causes of action and seeking substantially identical relief as plaintiff in this case.

or prospective race discrimination claims to release, resulting in unequal treatment in the making and enforcement of contracts and retaliation in violation of 42 U.S.C. § 1981 and N.Y. Executive Law § 296.  She also claims that the Union breached its duty under the collective bargaining agreement to fairly represent her with respect to negotiating the terms of the Separation Agreement, in violation of 29 U.S.C. §§ 185 and 159(a).  *See* Item 1, ¶¶ 26-46.

The City moves for summary judgment dismissing the complaint against it, based on the following grounds:

1. Plaintiff may not sue the City pursuant to 42 U.S.C. § 1981.

2. Plaintiff's claim regarding discriminatory calculation of her seniority date is time-barred.

3. Even if actionable, plaintiff's discrimination and retaliation claims against the City fail as a matter of law.

4. The City is not considered an "employer" within the meaning of the LMRA, and is not subject to liability for breach of the collective bargaining agreement.

*See* Item 54-2.

The Union also moves for summary judgment dismissing the complaint against it, based on the following grounds:

1. Lack of subject matter jurisdiction under the LMRA.

2. Plaintiff cannot prove discrimination on the part of the Union.

See Item 51-6.

Each of these grounds is discussed in turn.

## DISCUSSION

**I.      Summary Judgment**

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged.  *See, e.g.,  Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56, Committee's notes to 2010 amendments.   Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, ___F.App'x___, 2011 WL 5176188 (2d Cir. Nov. 2, 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v.*

*Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011).   In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

**II.      The City's Motion for Summary Judgment**

       **A.      42 U.S.C. § 1981**

       42 U.S.C. § 1981 provides:

(a) Statement of equal rights.
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

       In her First Claim for Relief, plaintiff alleges that the City discriminated against her in the making and enforcement of contracts in violation of § 1981 by requiring, as a condition to her acceptance of severance pay,  extinguishment of her NYSDHR charge–a requirement not applicable to White Detention Aides.   However, in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units …."

*Id.* at 733.[3]   Accordingly, plaintiff may not sue the City for unequal treatment in the

negotiation of the Settlement and Separation Agreements, retaliation for filing the NYSDHR

charge, or any other allegedly discriminatory conduct, pursuant to § 1981.

Because plaintiff cannot maintain a claim against the City under 42 U.S.C. § 1981,

and has not alleged any facts to support a claim for municipal liability under 42 U.S.C.

§ 1983, *see Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004)

(plaintiff suing municipality for discrimination under either statute is required to show that

the challenged acts were performed pursuant to a municipal policy or custom), the City is

entitled to summary judgment dismissing plaintiff's First Claim for Relief.

### B.      Statute of Limitations

In her Second Claim for Relief, plaintiff alleges that the City's conduct "in

establishing the terms of severance and separation from employment" constitutes

discriminatory employment practices in violation of the NYSHRL.  Item 1, ¶ 36.  The City

contends that, to the extent this claim is based on the calculation of her seniority date, it

accrued in May 2004 upon (or just prior to) her return to work, and is therefore barred by

the three-year statute of limitations of N.Y.C.P.L.R. § 214(2).  *Murphy v. American Home*

---

[3]In 1991, Congress amended § 1981 to add a new subsection (c), providing that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  As recognized by this court in *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 2007 WL 3354211 (W.D.N.Y. Nov. 9, 2007), this caused a split in the circuit courts regarding whether Congress intended to create a private cause of action against state actors, thus overruling the Supreme Court's decision in *Jett*, and the Second Circuit has not weighed in on the issue.  However, the majority of the circuit courts (as well as the majority of district courts within the Second Circuit) that have addressed the issue have held that *Jett* remains good law.  *See, e.g., Brown v. New York State Dept. of Correctional Services*, 583 F. Supp. 2d 404, 410 n. 1 (W.D.N.Y. 2008) (citing cases); *Bond v. City of Middletown*, 389 F. Supp. 2d 319, 328 (D.Conn. 2005).  Following this weight of authority, and In the absence of controlling Second Circuit authority to the contrary, this court will not deviate from the Supreme Court's analysis of § 1981 in *Jett*.

*Prods. Corp.*, 58 N.Y.2d 293, 307 (1983), *cited in Lightfoot v. Union Carbide Corp.*, 110

F.3d 898, 907 (2d Cir. 1997) (claim under NYSHRL must be filed within three years of the

alleged discriminatory act).

However, broadly construed, this claim encompasses not only the calculation of

plaintiff's seniority date in 2004, but also the City's role in negotiating the Settlement and

Separation Agreements in May and June 2009.  As discussed above, the record reflects

that, in December 2008, plaintiff's seniority date was restored to reflect her original date

of hire for the purpose of preferred scheduling and overtime, and was reconsidered during

the May-June 2009 negotiations in connection with the offer of severance pay in exchange

for the release of her claims against the City.  Accordingly, to the extent plaintiff's NYSHRL

claim is based upon the City's conduct in May and June 2009, it would not be barred by

the three-year statute of limitations of N.Y.C.P.L.R. ¶ 214(2).

## C.    Discriminatory Severance/Retaliation

The City also contends that, even if plaintiff's claims against it are allowed to

proceed, plaintiff has failed to come forward with a *prima facie* showing of discrimination

or retaliation sufficient to withstand summary judgment.  Generally, claims of race-based

discrimination and retaliation brought under § 1981 are analyzed under the familiar

burden-shifting framework adopted by the Supreme Court in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), for the analysis of claims brought under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  *See Ruiz v. County of Rockland*, 609 F.3d

486, 491 (2d Cir. 2010).  Under this framework, a plaintiff must first establish a *prima facie*

case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  In order to make out a *prima*

*facie* case of racial discrimination in this action, plaintiff must show that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 153 (S.D.N.Y. 2011) (citing cases). Similarly, in order to demonstrate a *prima facie* claim of retaliation, plaintiff must demonstrate that: (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Kessler v. Westchester County Dep't of Social Services*, 461 F.3d 199, 204 (2d Cir. 2006); *Quattrone v. Erie 2 Chautauqua–Cattaraugus Bd. of Co-op. Educational Services*, 2011 WL 4899991 (W.D.N.Y. Oct. 13, 2011).

Plaintiff's § 1981 claim fails as a matter of law at the third stage of the *prima facie* inquiry. Simply stated, the law is clear that a plaintiff alleging discriminatory treatment in the negotiation of a severance payment cannot claim to have suffered an adverse employment action where the "award of severance pay was a privilege rather than a right." *Matya v. Dexter Corp.*, 2006 WL 931870, at * 15 (W.D.N.Y. Apr. 11, 2006), *aff'd*, 250 F.App'x 408 (2d Cir. 2007). In this regard, the submissions on file reveal that the collective bargaining agreement between the Union and the City did not provide for severance payments for covered employees in the event their position was abolished. *See* Item 53, ¶ 18. Rather, severance pay was offered to the Detention Aides as the result of extensive bargaining between the City and the Union to settle pending improper employment practice charges regarding the impact of the City's decision to transfer Detention Aides' duties to

uniformed police officers.  As stated in *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F.

Supp. 87 (N.D.N.Y. 1994):

> Because plaintiff was not otherwise entitled to receive severance pay and benefits, the award of severance pay and benefits was a privilege rather than a right.  As such, defendant's refusal to supply plaintiff with severance pay and benefits can not be characterized as an adverse action.  Instead, defendant merely declined to enlarge plaintiff's rights to compensation.

*Id.* at 95 (citing *Cronin v. ITT Corp.*, 737 F. Supp. 224, 230 (S.D.N.Y.), *aff'd*, 916 F.2d 709

(2d Cir. 1990)).

Furthermore, the law is also clear that "an employer may require employees to

execute a release of claims as a condition of receiving severance benefits.  Offering

severance benefits in return for a general release of claims is neither retaliatory nor

discriminatory." *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 852 (collecting cases); *see*

*also Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1042 (11th Cir. 2007)

("employers have no obligation to vary the compensation offered for a release based on

the potential strength of an employee's claim."); *Griffin v. Kraft Foods, Inc.*, 62 F.3d 368,

374 (11th Cir. 1995) (rejecting argument that severance plan's ADEA waiver constituted

disparate treatment under the ADEA because older employees received no additional

consideration for waiving such claims, which younger employees lacked).

Based on these holdings, and considering the undisputed facts presented in the

submissions on file, it is apparent to the court that plaintiff suffered no adverse employment

action as a result of defendants' offer of severance pay in return for a release of all claims

against the City pertaining to the transfer of Detention Aides' duties to uniformed police

officers.  Accordingly, even if plaintiff's complaint could be construed to assert cognizable

claims against the City for unequal treatment in the negotiation of the Settlement and

Separation Agreements, retaliation for filing NYSDHR charges, or any other allegedly discriminatory conduct, those claims would fail as a matter of law, and any attempt to replead them would be futile.

### D.    City as "Employer" Under LMRA/NLRA

Plaintiff's Third Claim For Relief, broadly construed, asserts a "hybrid" claim against the City, as her employer, for breach of its duty under the collective bargaining agreement to negotiate fair terms of separation from employment, in violation of Section 301 of the LMRA, 29 U.S.C. § 185; and against the Union, as his bargaining representative, for breach of its duty to fairly and adequately represent him, a duty "which is implied under the scheme of" the NLRA, 29 U.S.C. § 151 *et seq.  DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 & n. 14 (1983).  However, it is now well-settled in the Second Circuit that, since political subdivisions of the States are not considered to be "employers" under either the LMRA or the NLRA, the federal courts lack subject matter jurisdiction over hybrid breach of collective bargaining agreement/duty of fair representation claims brought by their employees.  *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (LMRA "exempt[s] from the definition of employer 'any State or political subdivision thereof' "); *Smith v. United Fed'n of Teachers*, 162 F.3d 1148, 1998 WL 639756, at *1 (2d Cir.) ("[Plaintiff's] claim against the Union is clearly predicated on his assertion that the employer violated the collective bargaining agreement between it and the Union.  Because there is no federal jurisdiction over the employer, there is no jurisdiction over the companion claim against union for breach of the duty of fair representation."), *cert. denied*, 525 U.S. 883 (1998).

Based on this analysis, the court finds that the City has met its burden of demonstrating the absence of any genuine issues of material fact for trial on the claims brought against it in this action, and plaintiff has come forward with no specific facts showing that trial is needed.  Accordingly, the City is entitled to summary judgment as a matter of law dismissing the complaint.

**III.    The Union's Motion for Summary Judgment**

**A.    Lack of Subject Matter Jurisdiction**

As explained in the immediately preceding discussion, because there is no federal jurisdiction over the City for plaintiff's claim brought under the LMRA for breach of the collective bargaining agreement, there is no subject matter jurisdiction over the companion claim against the Union for breach of the duty of fair representation implied under the scheme of the NLRA.  *See Smith*, 1998 WL 639756, at *1.  The Union is therefore entitled to summary judgment dismissing plaintiff's "hybrid" claim.[4]

**B.    Discrimination**

Finally, to the extent the complaint can be construed to allege a direct discrimination claim against the Union, that claim is subject to dismissal as well.  As discussed above with respect to plaintiff's discrimination claim against the City, plaintiff cannot establish a *prima facie* case of discrimination regarding defendants' conduct in negotiating the Settlement

---

[4]The Union also contends that, to the extent the complaint can be construed to plead a state law claim for breach of the duty of fair representation, such a claim would be untimely under the four-month statute of limitations in N.Y.C.P.L.R. § 217(2)(a).  The court declines to address this contention.  Plaintiff has not asserted a state law basis for her breach of duty claim against the Union in this action, and in the absence of subject matter jurisdiction over plaintiff's "hybrid" federal law claim, the court declines to exercise its supplemental jurisdiction in order to reach the timeliness issue.

and Separation Agreements because she suffered no adverse employment action as a result of the extensive bargaining between the City and the Union to settle pending improper employment practice charges concerning the impact of the City's decision to transfer Detention Aides' duties to uniformed police officers.  This holding applies with equal force to both sides of the bargaining table.

Accordingly, the Union is entitled to summary judgment as a matter of law dismissing the discrimination claim against it.

## CONCLUSION

Based on the foregoing, the motions for summary judgment filed by the Union (Item 53) and the City (Item 54) are granted, and the complaint is dismissed in its entirety.

The parties shall bear their own costs.[5]

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    1/6                        , 2012
p:\pending\2009\09-824.dec27.2011

---

[5]As a result of this order, the City's motion for sanctions and contempt (Item 42) is denied as moot.